UNITED STATES DISTRICT COURT

OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DIANNA JOHNSON, et al<br><br>                Plaintiffs<br><br>v.<br><br>GOVERNMENT OF THE DISTRICT<br>OF COLUMBIA, et al.<br><br>                Defendants | Civil Action No:     **02-2364** (**RMC**)<br><br>Next Event: Telecon 7/13/07 |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MEMORANDA ON
PRECERTIFICATION DISCOVERY DOCKET NUMBERS 130 AND 131

The issue before the Court is whether in the context of this case it is an abuse of the Court's discretion (especially given the age of this case) to require defendants to file an opposition to plaintiffs' motion to certify before they take discovery from the named plaintiffs given defendants have not demonstrated in their memorandums (docket ## 130 and 131) a need for discovery on certification issues, and given that defendants have not propounded any discovery to plaintiffs even though the Court entered a Scheduling Order on March 16, 2007 (almost 4 months ago) which specifically authorized defendants to take discovery from the named plaintiffs.  The issue is not whether the Court is denying discovery to defendants.

1

The Court gave all defendants an opportunity to state orally and in writing the specific facts they needed to oppose plaintiffs' motion to certify so that the Court could evaluate whether defendants would be prejudiced by having to oppose plaintiffs' motion before taking discovery from the named plaintiffs, and to determine which topics related to certification issues.  Defendants specified that they needed discovery from named plaintiffs on the issues of commonality, typicality, numerosity (page 1; page references are to the federal defendants' memorandum, docket # 131) and damages (page 8). Defendants then proposed deposition questions/ topics (pages 7-9) and specified that they needed the named plaintiffs' DOBs and social security numbers (page 7).

The answer here is defendants are not entitled to delay filing an opposition to plaintiffs' motion to certify while taking discovery from the named plaintiffs because (1) defendants have not articulated any facts in the possession of the named plaintiffs they need to oppose plaintiffs' motion to certify and (2) defendants have not taken any steps to take any discovery in this case even though the Court entered a Scheduling Order on March 16, 2007 and (3) this case is almost six years old and (4) federal defendants did not seek to take any discovery before opposing the motion to certify in the related case of Bame v. Clark, 05-1833 (RMC) and the District did not seek to take any discovery before opposing the motions to certify in the similar strip search class action cases of Bynum v. District of Columbia, 02-956 (RCL) or Barnes v. Dist. of Columbia, 2007 U.S. Dist. LEXIS 20856 (D.D.C. 2007) cases (where Court certified both a strip search and an overdetention class).

Rule 26 and <u>Hubbard</u> support this conclusion because both clearly state that a judge can exercise her discretion to control the mode and order and scope of discovery.  <u>Hubbard</u> shows that it is not an abuse of discretion to carve off certification issues from other issues and to limit at the precertification phase *plaintiffs*' access to certain enumerated deposition questions and certain categories of documents enumerated by the Court.  The <u>Hubbard</u> Court did not allow interrogatories or document production requests and specifically disallowed 30(b)(6) depositions.  Here, the Court has given both defendants a chance to propose at the telecon and in writing the deposition questions and the categories of documents they claim they need to oppose plaintiffs' motion for certification.  Neither has made any valid showing.

As for deposition questions, as demonstrated below, defendants did not propose any deposition questions defendants need to ask that relate to commonality, typicality or numerosity (as opposed to merits or damages issues).

As for categories of documents, defendants already have much more access than either plaintiffs or Plaintiffs' counsel to the (electronic and paper) documents they claim they need about named plaintiffs such as their arrest/ conviction history, DOBs and social security numbers.  For example, the federal defendants state on page 7 of their memorandum that defendants need the name, DOB, contact information and social security number of each named plaintiff.  But, in fact, defendants have this information in their own databases and other records.  Moreover, plaintiffs have already produced all

documents[1] in its possession in discovery by providing initial disclosures to all defendants on June 29, 2007 and plaintiffs have not received a single word of follow up to the disclosures.  Plaintiffs have produced to defendants all documents in their possession, as the initial disclosures indicate.  Defendants did not propound any further document requests in their memorandum.

So, neither this Court nor plaintiffs would be depriving defendants of their discovery.  The Court would just be saying that since defendants have not demonstrated a need for discovery from named plaintiffs before opposing plaintiffs' motion to certify, there is no basis for allowing defendants to delay filing an opposition while they take discovery from named plaintiffs.  Defendants remain free to take discovery but not to cause further delay.  This conclusion is supported by the following factors: defendants have taken no steps to take any discovery since entry of the scheduling order on March 16, 2007 (specifically permitting defendants to take discovery from plaintiffs), and defendants did not raise any questions concerning plaintiffs initial disclosures, and the case is almost 6 years old.

Anyway, the decision is not a death knell for defendants on the certification issue.  All certification determinations are conditional and defendants can always move to decertify if they do commence discovery and do uncover facts which undermine the certification determination.  Practical evidence that the course plaintiffs propose would not really prejudice defendants is the fact that the federal defendants did not seek to take any discovery before filing an opposition to the motion to certify in <u>Bame v. Clark</u>, 05-1833

---

[1] Plaintiffs also have some materials on the MPD booking database provided by the District or downloaded from public access web sites but these are already in the possession of defendants.

(RMC) which is a strip search case related to this case, and the District did not seek discovery before opposing plaintiffs' motions to certify in either of the <u>Bynum v. District of Columbia</u>, 02-956 (RCL) or <u>Barnes v. Dist. of Columbia</u>, 2007 U.S. Dist. LEXIS 20856 (D.D.C. 2007) cases (where the Court certified both a strip search and an overdetention class).

Moreover, there is also no surprise here. Plaintiffs filed their initial motion to certify on 3/3/03 (docket # 14) so defendants have had an opportunity to think about the type of discovery they need since at least 2003. Moreover, Plaintiffs explained over 6 weeks ago at the last in court status attended by all counsel on June 1, 2007 their proposal to file a motion for certification on both liability and damages, but to bifurcate the liability determination from the damages determination, and to defer any discovery on damages until after the liability determination. Plaintiffs' counsel also stated at the last status on June 1, 2007 that plaintiffs planned to move for certification soon rather than waiting for the end of discovery because if the Court were going to deny the motion then discovery would be mooted and if the motion were granted and defendants appealed, then discovery and merits determinations for the named plaintiffs at least could proceed while the appeal was pending. The Court then queried Mr. McDaniel about certification issues. Plaintiffs' counsel's recollection of the colloquy is that Mr. McDaniel stated he thought the certification issues would be legal issues.

**Damages.** Both defendants state they need discovery on damages. However, damages discovery is not needed to oppose the motion (since the damages discovery and damages

5

discovery will not commence until after a liability determination) and so there is no need to defer an opposition until after damages discovery.

**Commonality.**  There is no need for discovery on this issue because all it takes for plaintiffs to satisfy the commonality requirement is a single common question of law or fact.  Interrogatory responses from the Marshals Service in the Helton case based in part on information provided by the then Supervising Deputy in charge of the Superior Court Cellblock (Inspector Mark Shealey) state the United States Marshal for the Superior Court of the District of Columbia had a policy/ practice of subjecting all females (but not males) to strip searches at the Superior Court.  Inspector Mark Shealey confirmed this policy/ practice in his recent deposition.  Moreover, the existence of a practice or policy is still a common question of fact even whether defendants dispute its existence, Tardiff v. Knox County, 365 F.3d 1, 6 (1st Cir. 2004), or concede it.  Augustin v. Jablonsky (In re Nassau County Strip Search Cases), 461 F.3d 219, 227 (2d Cir. 2006)(defendant's concession of existence of strip search cannot limit the predominance analysis or eliminate issue as a common question).  Since the supposedly individual issues proffered by defendants on commonality do not defeat certification, then defendants do not need discovery on them.

**Typicality.**  Typicality is a legal issue of whether the named plaintiffs' claims are the same as the other class members' claims.  Here, the named plaintiffs have the exact same claims as the potential class members.  The requirement, which is liberally construed, dictates that "[a] plaintiff's claim is typical if it arises from the same event or practice or

6

course of conduct that gives rise to a claim of another class member's where his or her claims are based on the same legal theory." Barnes v. Dist. of Columbia, 2007 U.S. Dist. LEXIS 20856 (D.D.C. 2007).  Similarly to commonality, typicality is not destroyed simply because there are some factual variations between claims of the representatives and other class members.  Id.  Typicality issues based on arrest charge can be determined from data in the MPD arrest booking databases which capture name, arrest charge, DOB and in most cases social security number.  The Female Fourth Amendment Class excludes females arrested on charges involving drugs, weapons and violence.  This analysis can be made from the booking database data, in the possession of defendants.  Arrest charge and the presence/ absence of probable cause is irrelevant for the Female Fifth Amendment Class because the liability fact is strip searches of females but not males.

Whether or not probable cause existed to justify a search is a merits issue and can be addressed by discovery and motions after certification.  Moreover, individual determination relating to probable cause determinations are (1) totally irrelevant to the with respect to the Female Fifth Amendment Class and (2) totally irrelevant to the with respect to the Female Fourth Amendment Class because the Marshals staff subjected all females to a blanket strip search regardless of individual factors.  Defendants cannot use individual factors discovered now and not used by the searching officers to retroactively create probable cause.  At any rate, individual probable cause determinations relate to merits issues and defendants can take discovery and file motions on merits issues after

the class determination. Females for whom probable cause was supplied by the arrest charge (drugs, weapons, felony violence) have been excluded from the Fourth Amendment, and arrest charge data is in the MPD arrest booking database. Both the Helton discovery and Inspector Mark Shealey's (then supervisor of the Superior Court cellblock) deposition in this case confirm that the Superior Court Marshals subjected all females[2] and no males to strip searches. Mark Shealey said all females but no males were strip searched because there were far too many males to strip search. As the Second Circuit held in reversing a district court's determination that these types of issues destroyed predominance in a strip search class action:

> The only countervailing, individualized liability issue was whether, regardless of the policy, some plaintiffs were strip searched based upon "reasonable and contemporaneously held suspicion." The existence of this defense does "not . . . foreclose class certification." Id. at 138 (internal quotation marks omitted).

Augustin v. Jablonsky (In re Nassau County Strip Search Cases), 461 F.3d 219, 230 (2d Cir. 2006). Therefore, discovery into these issues is not relevant at the certification phase.

**Numerosity.** Numerosity is not realistically in dispute. Anyway, the District (after consultation with all parties) provided a database with the names of all the Female Fourth

---

[2] Supervising Deputy Mark Shealey (now Inspector Shealey) stated that the Superior Court Marshals subjected all female arrestees (but not male arrestees) to blanket strip searches because there were simply too many males to strip search them all, but the smaller number of females made subjecting all of them to strip searches practicable. Inspector Shealey also stated that for the same reason Superior Court Marshals subjected all female (not male) prisoners brought to the Superior Court from outside jails such as DC Jail to blanket strip searches.

Amendment and Female Fifth Amendment class members and their contact data and social security numbers and arrest charges to all parties.  Defendants have the names of all males and their contact data and arrest charges in their own databases and do not need to seek this data from the named plaintiffs.

**Hubbard v. Potter**.  Hubbard v. Potter actually supports plaintiffs' position because it demonstrates a court's authority to restrict discovery in the pre-certification phase to certification issues and to restrict discovery to certification issues and to restrict the modes of discovery.  First, Hubbard actually dealt with limits on plaintiffs' discovery rights not defendants.  Second, the Hubbard case limited plaintiffs' modes of discovery to documents and depositions.  The Hubbard Court did not allow plaintiffs to propound interrogatories.  Thirdly, it limited discovery to enumerated documents and specific enumerated deposition questions.

**Federal defendants' specific deposition questions**

The federal defendants proposed 15 specific deposition questions which the District adopted.  None of these questions relate to a certification issue where defendant does not already have the data.  Moreover, both interrogatory responses and deposition testimony provided by federal defendants in this case and the Helton case show that females were subjected to blanket strip searches on the basis of gender and so probable cause facts not relevant even to merits issues.  Below plaintiffs demonstrate that none of defendants'

9

proposed deposition questions/ topics is necessary to filing an opposition to plaintiffs'

motion to certify:

1. concerns probable cause because relates to drug history or weapons history; number of other arrestees with named plaintiff at time of arrest not relevant to commonality or typicality or numerosity because relates to intermingling (federal defendants' memorandum at page 4) and this is a merits issue
2. how many other prisoners with named plaintiff in police custody not relevant to commonality or typicality or numerosity because relates to intermingling (federal defendants' memorandum at page 4) and this is a merits issue; also this data is in MPD booking database accessible to Marshals and US Attorney's Office because van sheets with name, PDID, arrest charge, sex, DOB are generated for each van load
3. number of other prisoners named plaintiff had access to in van during transport not relevant to certification because relates to intermingling (federal defendants' memorandum at page 4) and this is a merits issue and also this data is in MPD booking database accessible to Marshals and US Attorney's Office because van sheets with name, PDID, arrest charge, sex, DOB are generated for each van load
4. identities or charges of other prisoners in vicinity (where, when?) not relevant and also this data is in MPD booking database accessible to Marshals and US Attorney's Office because van sheets with name, PDID, arrest charge, sex, DOB are generated for each van load
5. allegations of drugs or weapons is a merits issue for the Fourth Amendment Class only not a certification issue and interrogatory responses and deposition testimony of supervising deputy of Superior Court Cell block state all females arrested were subjected to blanket strip searches
6. [Keisha Holloway question] whether a named plaintiff was carrying a weapon is not relevant to certification, and anyway all weapons recovered from plaintiffs should have been recorded in a contraband log or incident report maintained by federal defendants
7.  [Donna Curtis question] possession of drug paraphernalia is a merits question for the Fourth Amendment class, and anyway all paraphernalia recovered from plaintiffs should have been recorded in a contraband log or incident report maintained by federal defendants
8. dependency on drugs at time of arrest not related to any of commonality, typicality or numerosity; merits issue if not privileged
9. showing signs of drug addiction at time of arrest not related to any of commonality, typicality or numerosity or merits because blanket searches of females

10

10. information on arrestee's wristband is in the MPD booking computer out of which wristband was generated; also, this is a merits issue for the Fourth Amendment class only and USDM Julie Shealy testified searching marshals did not check charge data on wristband
11. other prisoners a named plaintiff had access to before reaching cellblock not related to any of commonality, typicality or numerosity because relates to intermingling (federal defendants' memorandum at page 4) and this is a merits issue
12. [Vickie Brooks question] whether any named plaintiff threatened to harm someone with weapon that could have been secreted in clothing not related to any of commonality, typicality or numerosity
13. [Carolyn Montgomery question) whether named plaintiff who was a prostitute felt need to arm self on street not related to any of commonality, typicality or numerosity
14. how a named plaintiff was dressed at time of arrival not related to any of commonality, typicality or numerosity
15. whether named plaintiffs believe injunctive relief is warranted is not a certification issue

**Specific documents/ information defendants state they need to oppose a certification motion**

Defendants state on page 7 of their memorandum that they require at the least the DOB, social security number for each named plaintiff to asses the criminal histories of the named plaintiffs. First, the DOB and social security number for each named plaintiff is in the MPD booking database that all defendants have access to. Secondly, this data is simply not relevant to any of commonality, typicality or numerosity.

**Plaintiffs proposed briefing schedule**

Plaintiffs propose the following briefing schedule for their motion to certify:

Within 7 calendar days from the date of this filing plaintiffs file their motion to certify

Within 20 calendar days from the date plaintiffs motion is filed all defendants file any opposition

Within 20 calendar days from the date defendants file any opposition plaintiffs file any reply

Respectfully submitted,

_____sig_____
WILLIAM CLAIBORNE
D.C. Bar No. 446579
Counsel for the Named Plaintiffs and the
Classes
717 D Street, NW
Suite 210
Washington, DC 20004
Phone 202/824-0700

Louis Kleiman
D.C. Bar No. 124-933
2055 15th Street
Arlington, VA
Phone 703-524-3333

Barrett S. Litt, Esq.
pro haec vice
3435 Wilshire Blvd.
Los Angeles, CA
Phone (213)-386-3114

Paul Estuar, Esq.
pro haec vice
3435 Wilshire Blvd.
Los Angeles, CA
Phone (213)-386-3114