# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DIANA JOHNSON**, *et al.*,       ) <br>       ) <br> **Plaintiffs**,       ) <br>       ) <br> **v.**       ) <br>       ) <br> **THE DISTRICT OF COLUMBIA**, *et al.*, ) <br>       ) <br> **Defendants**.       ) <br>       ) | **Civil Action No. 02-2364 (RMC)** |

## <u>MEMORANDUM OPINION</u>

This lawsuit challenges actions by Todd Dillard, the former Marshal of the Superior Court of the District of Columbia, the United States Marshal Service ("USMS"), and the District of Columbia. Plaintiffs complain that from December 2, 1999 to April 25, 2003 (the "Class Period"), the Superior Court Marshal subjected all female (but not male) arrestees[1] to blanket drop, squat, and cough strip searches, without an individualized finding of reasonable suspicion, and that the District of Columbia knew or should have known about the illegal searches but nonetheless presented its arrestees to the Superior Court Marshal. On this factual predicate, Plaintiffs have filed a Motion for Class Certification [Dkt. # 138].

Plaintiffs propose certification of a "Fifth Amendment Class," based on alleged violations of the equal protection component of the Fifth Amendment to the U.S. Constitution, composed of all female arrestees, regardless of charge, taken to the Superior Court for presentment

---

[1] "Arrestee," as used herein, is a person who was arrested and brought to D.C. Superior Court for presentment pursuant to Rule 5 of the Superior Court Rules of Criminal Procedure, but had not yet been presented to a judge or magistrate at Superior Court. *See* Pls.' Mem. in Supp. of Mot. for Class Certification ("Pls.' Mem.") [Dkt. # 138] at 1 n.1.

1

during the Class Period,[2] and a "Fourth Amendment Class," composed of female arrestees, arrested on charges not involving weapons, drugs, or felony violence, who were taken to the Superior Court for presentment during the Class Period.[3]

Plaintiffs also seek to certify an "Alternative Fourth Amendment Class," complaining that the Superior Court Marshall subjected all arrestees, males as well as females, to the blanket drop, squat, and cough strip searches, and that the District of Columbia knew or should have known about the illegal searches, but handed its arrestees over to the Superior Court Marshal during the Class Period anyway.

Plaintiffs argue that each class – the Fifth Amendment Class, the Fourth Amendment Class, and the Alternative Fourth Amendment Class – separately meets the requirements as a "hybrid" class. *See Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997) (courts may adopt a "hybrid" approach, certifying a Federal Rule of Civil Procedure 23(b)(2) class as to the claims for

---

[2] As set forth in the Second Amended Complaint [Dkt. # 84], the "Fifth Amendment Class" is defined as:

> Each woman who, during the Class Period . . ., was (i) while in the Superior Court Cell Block or just before being put in the Superior Court Cell Block; (ii) being held for presentment subject to a statute of the District of Columbia; (iii) under similar circumstances as men arrestees; (iv) subjected to a blanket strip, visual body cavity and/or squat search.

Second Am. Compl. ¶ 191.

[3] As set forth in the Second Amended Complaint, the "Fourth Amendment Class" is defined as:

> Each woman who during the . . . Class Period . . . was or will be, (i) while being held or just before being put in the Superior Court Cell Block; (ii) for presentment under a statute of the District of Columbia; on either (iii)(a) a non drug, non violent traffic offense; (iii)(b) a non drug, non violent misdemeanor; or (iii)(c) a non drug, non violent felony; (iv) was subjected to a blanket strip, visual body cavity search and/or squat search without any individualized finding of reasonable suspicion or probable cause that she was concealing drugs, weapons or other contraband.

Second Am. Compl. ¶ 178.

declaratory or injunctive relief, and a 23(b)(3) class as to the claims for monetary relief, effectively granting 23(b)(3) protections including the right to opt out to class members at the monetary relief stage).  Plaintiffs seek injunctive and monetary relief against the District of Columbia and former Superior Court Marshal Dillard, and injunctive relief only against the USMS.

Marshal Dillard and the USMS (collectively, the "Federal Defendants") and the District of Columbia oppose the motion entirely, arguing, *inter alia*, that there is no live controversy and that the Plaintiffs lack standing to represent the interest of any future arrestees for purposes of injunctive relief.  The District of Columbia further argues that Plaintiffs cannot meet the "adequacy of representation" requirement of Federal Rule of Civil Procedure 23(a)(4).  For the reasons that follow, the motion will be granted in part and denied in part.

## I. BACKGROUND

This case has been pending for over five years.  The Plaintiffs and the United States first strove mightily, with yeoman help from the District of Columbia, to identify the female arrestees during the Class Period and then to reach a settlement.  Only when those efforts failed unexpectedly did it become necessary to complete discovery and prepare for trial.

Plaintiffs allege that almost 16,000 female arrestees were subjected to the drop, squat, and cough strip searches during the period from December 2, 1999, three years before the Complaint was filed, to April 25, 2003, the date Federal Defendants allege they stopped the practice.  Pls.' Mem. at 2, Ex. 24 (Kriegler Aff. ¶ 11).

Courts routinely certify strip search class actions similar to this one.  *See, e.g.*, *Augustin v. Jablonsky (In re Nassau County Strip Search Cases)*, 461 F.3d 219 (2d Cir. 2006); *Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004); *Dodge County of Orange*, 226 F.R.D. 177

(S.D.N.Y. 2005); *Blihovde v. St. Croix County*, 219 F.R.D. 607, 622-23 (W.D. Wis. 2003); *Bynum v. District of Columbia*, 217 F.R.D. 43 (D.D.C. 2003); *Maneely v. City of Newburgh*, 208 F.R.D. 69 (S.D.N.Y. 2002).

## II. LEGAL STANDARDS

The "party requesting class certification under Rule 23 bears the burden of showing the existence of a class, that all prerequisites of Rule 23(a) are satisfied and the class falls within one of the categories of Rule 23(b)." *Bynum v. District of Columbia*, 214 F.R.D. 27, 30-31 (D.D.C. 2003) (citations omitted).

Under Rule 23(a) of the Federal Rules of Civil Procedure, there are four requirements for certification of a class:

1. the class is so numerous that joinder of all members is impracticable ("numerosity");
2. there are questions of law or fact common to the class ("commonality");
3. the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and
4. the representative parties will fairly and adequately protect the interests of the class ("adequacy").

Fed. R. Civ. P. 23(a). Plaintiffs must also satisfy at least one of the subdivisions of Rule 23(b). A plaintiff satisfies Rule 23(b)(2) by showing:

the party opposing the class had acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b)(2). A plaintiff satisfies Rule 23(b)(3) by showing:

(1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

4

Fed. R. Civ. P. 23(b)(3).

In deciding a motion for class certification, the "inquiry does not extend to an examination of the merits of the case. Instead, the legal standard is whether the evidence presented by plaintiffs establishes a 'reasonable basis for crediting [plaintiffs'] assertions.'" *Bynum*, 214 F.R.D. at 31 (citing cases); *Chang v. United States*, 717 F.R.D. 262, 269 (D.D.C. 2003) ("Once the existence of a class has been established, the Court does not consider the merits of the plaintiffs' claims prior to proceeding to a determination of whether the requirements for class certification set forth in Fed. R. Civ. P. 23(a) and (b) have been met."). The determination of whether to certify a matter as a class action must be done "at an early practicable time" in the case. *See* Fed. R. Civ. P. 23(c)(1)(A).

## III. ANALYSIS

The Federal Defendants resist class certification. Only two of their arguments are serious: First, they contend that there is no live controversy, because Marshal Dillard has retired and the USMS has ceased the practice (i.e., the case is moot); and second, the Federal Defendants contend that the named Plaintiffs do not have standing to represent the interests of future arrestees to support the request for injunctive relief.

The District of Columbia argues that the request for Rule 23(b)(2) certification (for injunctive relief) should be denied as moot because the Federal Defendants have changed their search policy. It also argues that there is a lack of predominance of common issues pursuant to Federal Rule of Civil Procedure 23(b)(3) in that there is no evidence concerning the injuries any representative Plaintiff or other class member may have suffered. *See* District of Columbia's Mem. in Opp. to Pls.' Mot. for Class Certification ("D.C. Defs.' Mem.") at 5 ("[i]t is this very lack of

information that makes it impossible *at this stage* for the court to determine whether common issues predominate. . . ." (emphasis in original)).  Finally, the District of Columbia argues that the Court cannot certify the Alternative Fourth Amendment Class because there is no factual basis to support the theory that males as well as females were subjected to the same blanket search policies.  *Id.* at 6.

The Court agrees that there is a lack of factual support concerning the existence of the Alternative Fourth Amendment Class.   Therefore, the Court will deny the request for certification of the Alternative Fourth Amendment Class without prejudice.  *See Wagner v. Taylor*, 836 F.2d 578, 587 (D.C. Cir. 1987) ("some inspection of the circumstances of the case is essential to determine whether the prerequisites of . . . Rule 23 have been met.  Necessarily, the Court must examine both the claims presented and the showing in support of class certification for their adherence to the requirements of Rule 23.").  If, during discovery, evidence is produced that supports the existence of this class, the Court may revisit the issue.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order [on class certification] may be altered or amended before final judgment.").

The Court will examine each requirement for class certification for the Fourth and Fifth Amendment Classes in turn.

### A.    Existence of a Class

"It is axiomatic that for a class action to be certified a 'class' must exist."  *Barnes v. District of Columbia*, 242 F.R.D. 113, 120 (D.D.C. 2007) (citing *Simer v. Rios*, 661 F.2d 655, 699 (7th Cir. 1981)); *see also Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992) (clearly defined class is necessary "to ensure that the class is 'neither amorphous, nor imprecise'") (internal citation omitted).  It is clear that Plaintiffs have fulfilled their obligation in defining the classes such

6

that it is "administratively feasible for the court to determine whether a particular individual is a member." *Bynum*, 214 F.R.D. at 31 (citations omitted).  The Court is satisfied that Plaintiffs' proposed class definitions for the Fourth Amendment Class and the Fifth Amendment Class, *see supra* n.2 & n.3, are tailored properly so that "an individual would be able to determine, simply by reading the definition, whether he or she is a member of the proposed class." *Id*. at 32.[4]

### B.     Requirements of Rule 23(a)

All class actions certified under Rule 23 must meet certain prerequisites listed in subsection (a): there must be numerosity of class members, common questions of law or fact, the representative(s) must be typical of the class, and his or her representation of the class must be adequate.  Fed. R. Civ. P. 23(a).

### 1.     *Numerosity*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable."  The "numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *See Bynum*, 214 F.R.D. at 32 (citations omitted).  Generally, "courts have found that a proposed class consisting of at least forty members will satisfy the impracticability requirement." *Id*.

There is no question that the proposed Fourth Amendment and Fifth Amendment classes here are so numerous that joinder of all members is impracticable.  Defendants do not dispute Plaintiffs' assertion, using data drawn from the D.C. Metropolitan Police Department database system ("MPD Data") and from the D.C. Superior Court database system ("CIS Data"), that there could be as many as 16,000 members in the Fifth Amendment Class and over 6,000 members in the

---

[4] In the accompanying Order, the Court has made slight modifications to the class definitions in order to reflect the Court's decisions in the instant Memorandum Opinion.

Fourth Amendment Class. *See* Pls.' Mem., Ex. 24 (Kriegler Aff. ¶ 11). Furthermore, Plaintiffs have submitted affidavits from numerous individuals who claim to have been subjected to the strip search policy at issue. The Court, at this stage, does not need exact numbers, and understands that the parties are in the process of identifying potential class members. *See Bynum*, 214 F.R.D. at 32 (citing *Kilafi v. Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999) ("So long as there is a reasonable basis for the estimate provided, the numerosity requirement can be satisfied without precise numbers.")). The Court therefore concludes that the classes proposed by Plaintiffs satisfy the numerosity requirement of Rule 23(a)(1).

2.     *Commonality and Typicality*

The commonality requirement of Rule 23(a)(2) states that there must be "questions of law or fact common to the class." However, it is not necessary that every issue of law or fact be the same for each class member. Rather, if "there is *some* aspect or feature of the claims which is common to all," the requirement is satisfied. *Barnes*, 242 F.R.D. at 121 (citing *Pendleton v. Schlesinger*, 73 F.R.D. 506, 508 (D.D.C. 1977) (emphasis added)); *Bynum*, 214 F.R.D. at 32 (factual variations among class members does not defeat the commonality requirement so long as a single aspect or feature of the claim of the claim is common to all proposed class members).

The typicality requirement of Rule 23(a)(3) is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996). Because "[t]he crux of both commonality and typicality requirements is to ensure that the maintenance of a class action is economical, and that the named Plaintiffs' claims and the class

claims are so inter-related that the interest of the class members will be fairly and adequately protected in their absence," it is proper to discuss them together. *Dodge*, 226 F.R.D. at 180.

Plaintiffs have successfully established that there is sufficient commonality and typicality for both classes. First, "a strip-search, by its very nature, constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual," *Wood v. Clemons*, 89 F.3d 922, 928 (1st Cir. 1996), and this intrusion is alleged to have been commonly experienced by all members of both classes. Further, Plaintiffs have laid out several issues of law and fact that are common to all members of the two respective classes, including, obviously, whether the alleged policy violated the Fourth and Fifth Amendments. *See* Pls.' Mem. at 21-23, 39.

Regarding typicality, Rule 23 does not require that the representative plaintiffs endured precisely the same injuries that may have been sustained by other class members, only that the harm complained of be common to the class, and that the named plaintiffs demonstrate a personal interest or threat of injury that is real and immediate, not conjectural or hypothetical. *Bynum*, 214 F.R.D. at 34. The typicality requirement is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol*, 929 F. Supp. at 691. Here, Plaintiffs allege that the same course of conduct caused injury to the Plaintiffs in both classes, and that the causation claims are common to all. The claims of the named Plaintiffs are founded upon the same legal theory as those of class members – that Defendants violated the Forth and Fifth Amendments when they subjected Plaintiffs and all class members to blanket drop, squat, and cough strip searches prior to presentment. Although the circumstances of the strip searches may have varied by some degree, demonstrating typicality "does not mean showing that there are no factual variations between the claims of the plaintiffs." *Bynum*, 214 F.R.D. at 35.

Accordingly, the Court finds that Plaintiffs have satisfied the commonality and typicality requirements of Rule 23(a).

        3.     *Adequacy of Representation*

Federal Rule of Civil Procedure 23(a)(4) requires that certified classes have adequate representation. This requirement involves both adequacy of the named plaintiffs and adequacy of counsel. The requirement is met when: (1) there is no conflict of interest between the legal interests of the named plaintiffs and those of the proposed class; and (2) counsel for the class is competent to represent the class. *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997).

The Court sees no conflicts of interest between the representative Plaintiffs and the proposed Fourth and Fifth Amendment Classes. The issues presented by the named representatives mirror those faced by the putative class members. Also, the Court sees no conflict in these Plaintiffs ultimately representing the Alternative Fourth Amendment Class if, as the Federal Defendants have hinted, *see* Federal Defs.' Mem. in Opp'n to Pls.' Mot. for Class Certification ("Fed. Defs.' Mem.") at 3, but the existing record contradicts, males were subjected to the same blanket drop, squat, and cough procedure. However, any alleged conflict can be resolved at a later date if, in fact, the Court revisits the issue of certification of the Alternative Fourth Amendment Class.

Plaintiffs' counsel, experienced civil rights class action litigators who have participated in multiple class actions, are capable of representing the interests of the class in a satisfactory manner and Defendants do not argue otherwise. The Court is satisfied that the Plaintiffs have fulfilled the requirements of Rule 23(a)(4).

C.       **Rule 23(b) Requirements**

After the requirements under Rule 23(a) are met, a putative class must demonstrate that it fits under one of Rule 23(b)'s class types.  Plaintiffs seek to certify the Fourth and Fifth Amendment Classes as "hybrid classes" under both Rules 23(b)(2) and (b)(3).  For the reasons that follow, the Court will deny this request for "hybrid class" certification and will certify both classes under Rule 23(b)(3) only.

1.       *Rule 23(b)(2) Requirements*

i.       <u>Appropriateness of Equitable Relief</u>

To certify a Rule 23(b)(2) class for injunctive or declaratory relief, Plaintiffs must demonstrate that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2);   *Barnes*, 242 F.R.D. at 122-23.  Both the Federal Defendants and the District of Columbia argue against the certification of Rule 23(b)(2) injunctive relief classes, contending that the case is moot because the practice has stopped.  Federal Defendants also argue that Plaintiffs lack standing to represent the interests of future arrestees to bring a claim for injunctive relief.  For the reasons stated below,[5] the Court concludes that the claim for injunctive relief is not moot.  However, because Plaintiffs lack standing, the Court will not certify Rule 23(b)(2) classes for injunctive relief.

---

[5] Although the Court does not assess the merits of Plaintiffs' claims now, it is appropriate at the class certification stage to discuss justiciability concerns.  *See, e.g.*, *In re Lorezapam & Clorazepate Antitrust Litigation*, 202 F.R.D. 12, 22 (D.D.C. 2001); *Prado-Steinman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) ("[A]ny analysis of class certification must begin with the issue of standing."); *Cruz v. Am. Airlines, Inc.*, 356 F.3d 320, 331 (D.C. Cir. 2004) (plaintiffs' lack of standing disposed of plaintiffs' class certification arguments).

ii.   Mootness

There is no dispute over the facts that Marshal Dillard has retired and that the USMS stopped performing these blanket searches in 2003, after this lawsuit was filed.  Superior Court Marshal Stephen Conboy attests that he has no plans to reinstate the policy.  *See* Fed. Defs.' Mem., Declaration of Stephen T. Conboy ("Conboy Decl.") ¶¶ 2-5.  However, these facts alone do not moot Plaintiffs' Fourth Amendment Claim for injunctive relief.

In order to assert claims on behalf of a class, a named plaintiff must have personally sustained, or be in immediate danger of sustaining, "some direct injury as a result of the challenged statute or official conduct."  *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001) (citations omitted).  The harm must constitute "actual injury."  *Id.*  To obtain prospective injunctive relief, a plaintiff must demonstrate "that [she] is realistically threatened by repetition of [the violation]."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).  Even where a suit presented a live controversy when filed, the mootness doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will not affect the parties' rights presently and will not have a "more-than-speculative" chance of affecting them in the future.  *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990).

A case is moot if a defendant can demonstrate that two conditions have been met: (1) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation; and (2) there is no reasonable expectation that the alleged wrong will be repeated.  *Doe v. Harris*, 696 F.2d 109, 111 (D.C. Cir. 1982) (citing *City of Los Angeles*, 440 U.S. at 631).  However, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  If it did, the courts

12

would be compelled to leave the defendant free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (citations omitted; internal quotation marks and ellipses omitted). "The case may nevertheless be moot if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" *United States v. W.T. Grant Co.*, 345 U.S. 630, 632 (1953) (citation omitted).

Plaintiffs argue that their case is not moot because the Defendants continue to assert that the challenged practices were fully constitutional, thus leaving Defendants free to resume the objectionable searches after dismissal. *See* Pls.' Reply in Supp. of Mot. for Class Certification ("Pls.' Reply") at 7. Plaintiffs also point out that some of the named Plaintiffs, and certainly many of the putative class, are recidivists who can expect to be presented at Superior Court in the future where a resumed search practice would once against violate their constitutional rights. *Id*. at 6. Finally, Plaintiffs note that "[t]he affidavit from Stephen Conboy says he has no plans to reinstitute the policy, but does not state categorically that he will not." *Id*. at 2. Marshal Conboy, serving as Acting Superior Court Marshal and Superior Court Marshal since February 2004, attests:

> Several years ago, [the District of Columbia Superior Court ("DCSC")] instituted a new policy of body searches that discontinued the practice of conducting "strip searches" of arrestees placed in DCSC custody in the DCSC cellblock in the absence of an individualized finding of reasonable suspicion, if not probable cause.
>
> The current DCSC policy and practice (I) [sic] permits a strip search only upon an individualized finding of reasonable suspicion, if not probable cause; and (ii) insures that such searches will be applied even-handedly to both men and women arrestees and detainees. This policy has been enforced and uniformly applied by all DCSC cellblock personnel since I assumed the position of Acting United States Marshal.
>
> Based on the current DCSC policy and practice, it is unlikely that arrestees in the custody of DCSC personnel in the DCSC cellblock

13

will be subjected to strip searches which are not justified by
reasonable suspicion in the future.

I have no plan or desire, [sic] to modify the current policy or practice
that limits strip searches as described in this declaration.

Fed. Defs.' Mem., Declaration of Stephen T. Conboy ("Conboy Decl.") ¶¶ 2-5.

        The Court finds that Marshal Conboy's statement has insufficient finality for either

the Plaintiffs or the Court to be certain that the Superior Court Marshal will not revert to the prior

search policies.  The Marshal cannot be left "free to return to his old ways."  *Friends of the Earth,*

*Inc.*, 528 U.S. at 632; *see also City of Los Angeles*, 440 U.S. at 631 ("[T]he case is not moot, since

the moratorium by its terms is not permanent.  Intervening events have not 'irrevocably eradicated

the effects of the alleged violation.'") (citation omitted).  The Court finds that Plaintiffs' claims for

injunctive relief are not moot.  However, despite not being moot, Plaintiffs lack standing to bring

such claims for injunctive relief for the reasons stated below.

        iii.    <u>Standing</u>

        In a suit to obtain prospective injunctive relief, a plaintiff must show a real and

immediate threat of future injury to establish a viable case or controversy.  *City of Los Angeles*, 461

U.S. at 103-04; *Aulenback, Inc. v. Fed. Highway Admin.*, 103 F.3d 156, 166-67 (D.C. Cir. 1997).

In order to meet the constitutional minimum of standing to seek injunctive relief, Plaintiffs must

establish that they have "sustained" or are "immediately in danger of sustaining some direct injury

as the result of the challenged official conduct."  *City of Los Angeles*, 461 U.S. at 101-02 (1983)

(citations omitted).  In doing so, Plaintiffs cannot simply rely on past injury to show standing.

Instead, Plaintiffs must show a likelihood that they will be injured in the future.  *See O'Shea v.*

*Littleton*, 414 U.S. 488, 495-96 (1974) (holding that "past exposure to illegal conduct does not in

itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects"). Abstract injury is insufficient to establish standing. The "injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles*, 461 U.S. at 194. The likelihood that Plaintiffs may be arrested again is insufficient to overcome this requirement: "the threat to the plaintiffs [is] not sufficiently real and immediate to show an existing controversy simply because they anticipate violating criminal statutes" in the future. *Id*. (internal quotation marks and citations omitted).

Entitlement to injunctive relief is a question of equity and requires "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *City of Los Angeles*, 461 U.S. at 104 (citations omitted). These standards have not been met here. A court assumes that a plaintiff will obey the law and avoid prosecution. *Id*. Furthermore, under Superior Court Marshal Conboy, the old practices have been scrapped. While they could be renewed, there is nothing in the record to demonstrate the kinds of "immediacy and reality" to this possibility that is required for equitable relief. *Id*.; *see also Smook v. Minnehaha County*, 457 F.3d 806, 816 (8th Cir. 2006) ("Absent a sufficient allegation that [plaintiffs] are likely to be strip searched . . . in the future, they are no more entitled to an injunction than any other citizen.").

Finding that the Plaintiffs lack standing to obtain prospective injunctive relief, the Court declines to certify Rule 23(b)(2) classes, and will dismiss the USMS from this lawsuit.

2.      *Rule 23(b)(3) Requirements*

Despite the fact that Plaintiffs lack standing to seek equitable relief, they do not have to wait another day to litigate their right to damages. The Court will certify the Fourth and Fifth Amendment Classes under Rule 23(b)(3) because: (1) class-wide issues predominate and (2) a class

action is "superior to other available methods to the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *see Bynum*, 214 F.R.D. at 39.

i.     Predominance of Common Questions at Law

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement is "more stringent" and "far more demanding" than the commonality requirement of Rule 23(a). *Id*. at 609, 623.

Federal Defendants argue that Plaintiffs have failed the predominance test because individualized determinations will be necessary on the issue of liability. *See* Fed. Defs.' Mem. at 2 ("[W]hat is clear in this action is that the predominant issues will focus on whether each specific prisoner was searched without a sufficient basis under the Constitution. The factual inquiry for each will entail detailed and individualized assessments of all facts and circumstances known about the Plaintiffs and those with whom they had contact as they entered the criminal justice system. These extremely prisoner-specific inquiries predominate in the case and preclude class-action treatment."). Although Federal Defendants argue that the question of "whether Marshal Dillard and the USMS violated any potential claimants' constitutional rights . . . should turn on individualized determinations of whether USMS personnel had a legitimate basis to conduct such a search as to each arrestee," the Court disagrees. Plaintiffs are challenging whether Defendant Dillard, during the Class Period, had a policy or practice of subjecting female arrestees, regardless of charge, to the blanket drop, squat, and cough searches, and whether these searches violated the Constitution. These

16

issues are subject to generalized proof. *Bynum*, 214 F.R.D. at 39.   Moreover, the Federal

Defendants' assertion that the Marshals made "individualized determinations . . . as to each

arrestee," which will require "extremely prisoner-specific inquiries" is unsupported by any allegation

in the Second Amended Complaint or the record as it has developed. *See* Fed Defs.' Mem. at 3.

   The District of Columbia also argues that Plaintiffs have failed the predominance test,

alleging that Plaintiffs have not produced sufficient evidence that common issues predominate on

damages. *See* D.C. Defs.' Mem. at 3 ("Up to this point, the plaintiffs have not presented sufficient

evidence for the court to determine whether common issues predominate pursuant to Rule 23(b)(3).

. . . [N]one of the named plaintiffs [has] given testimony regarding their experience in the Superior

Court cellblock or about any 'injury they may have suffered as a result of the search . . . .'").   The

Court disagrees that determination of damages in this case would require individualization such that

Plaintiffs cannot establish predominance.   First, it may be the case that the "determination of

damages in this case [does not] require individualization." *See Dellums v. Powell*, 566 F.2d 167, 189

(D.C. Cir. 1977).   Moreover, the mere existence of  individual damages issues in a Rule 23(b)(3)

class does not cause individual issues to predominate over common issues on liability or causation.

*See Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997).   There are many ways of dealing with

possible individual damages issues, if necessary, such as "(1) bifurcating liability and damage trials

with the same or different juries; (2) appointing a magistrate judge or special master to preside over

individual damages proceedings; (3) decertifying the class after the liability trial and providing notice

to class members concerning how they may proceed to prove damages; (4) creating subclasses; or

(5) altering or amending the class." *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th

Cir. 2004).   Plaintiffs have proposed using a damages matrix in which a jury could set a schedule

of damages for class members.  *See* Pls.' Mem., Ex. 14 (Pls.' Proposed Trial Plan) (citing *Dellums*, 566 F.2d at 208), or trying damages on a class-wide basis using statistical sampling.  The Court reserves ruling on such methodology issues for another day but is satisfied that Plaintiffs have satisfied the predominance requirement for the purposes of class certification.

ii.      Whether Class Action is Superior

The second prong of Rule 23(b)(3) is superiority.   Under this requirement, "maintaining the present action as a class action must be deemed by the court to be superior to other available methods of adjudication.  A case will often meet this standard when 'common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit.'" *Bynum*, 217 F.R.D. at 49 (citations omitted).

The Court has already concluded that the size of the putative class makes joinder of individual parties impracticable and that there are issues of law and fact common to the potential class members.  It is also likely that the economic stake of each putative Plaintiff would be too small to suggest that individual suits should be brought.  *See Bynum*, 217 F.R.D. at 49.   Under these circumstances, the Court concludes that Plaintiffs have satisfied their burden of showing that class treatment is superior.  *See Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 12 (D.D.C. 2002) ("Rule 23(b)(3) favors class actions where common questions of law or fact permit the court to 'consolidate otherwise identical actions into a single efficient unit.'").

**D.      Notice to Potential Class Members**

Federal Rule of Civil Procedure 23(c)(2) provides that, in any class action maintained under Rule 23(b)(3), notice shall be given to the class in the best practicable manner.  As required by the Rule, the notice shall advise each potential class member that she can choose to opt out of the

18

class; that the judgment, whether favorable or not, will bind members who choose not to opt out; and that individual class members who do not request inclusion may, if they so desire, enter an appearance through counsel. Fed. R. Civ. P. 23(c)(2). Within 30 days of this Memorandum Opinion, the parties shall file a joint proposal regarding class notification procedures. If the parties are unable to reach agreement on the terms of the proposed order, the parties shall file separate orders. The Court notes that Plaintiffs have submitted a Proposed Trial Plan, *see* Pls.' Mem., Ex. 14 [Dkt. # 139], detailing proposals for, *inter alia*, possible bifurcation of a trial into liability and damages phases and methodologies for potential damage calculations. The Court reserves ruling on those proposals. However, if the parties believe that these issues must be resolved before the process for notification may commence, that should be detailed in the forthcoming joint or separate proposals.

### E.      Appointment of Class Counsel

Federal Rule of Civil Procedure 23(g)(1)(C)(i) requires the Court to appoint adequate class counsel to represent the class after considering: "(1) the work counsel has done in identifying or investigating potential claims in this action, (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources counsel will commit to representing the class." *See Bynum v. District of Columbia*, 384 F. Supp. 2d 342, 366 (D.D.C. 2005). The court may consider any "other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(C)(ii).

As discussed above, the Court is satisfied that Plaintiffs' counsel are experienced class action litigators who are competent to represent Plaintiffs.  As such, they will be appointed class counsel for the Fourth and Fifth Amendment Classes.

## IV. CONCLUSION

Plaintiffs' claims for injunctive and declaratory relief must be dismissed for lack of standing.  Because Plaintiffs sought only such equitable relief from the USMS, the USMS will be dismissed from this case.  The Court will certify Rule 23(b)(3) classes for both the Fourth Amendment and Fifth Amendment Classes.  The Court is satisfied that Plaintiffs' proposed class definitions for these two classes, with some modification, are adequate pursuant to Federal Rule of Civil Procedure 23(c)(1)(B).  Plaintiffs' motion for certification of an Alternative Fourth Amendment Class of men and women will be denied without prejudice for lack of any factual basis beyond the allegations in the Second Amended Complaint.  Plaintiffs' counsels William Claiborne and Barrett Litt will be appointed class counsel.  A memorializing order accompanies this Memorandum Opinion.

Dated:  February 8, 2008                      _____/s/_____

                                              ROSEMARY M. COLLYER
                                              United States District Judge