## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DIANNA JOHNSON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 02-2364 (RMC) |
| ) | |
| GOVERNMENT OF THE ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The United States Marshal for the Superior Court of the District of Columbia ("Superior Court Marshal") is a federal official. Wishing that were not so, Plaintiffs sue the District of Columbia for the actions of former Superior Court Marshal Todd Dillard in conducting strip searches of all women awaiting presentment to a Superior Court judge, without reasonable and particularized suspicion that any woman was carrying contraband on her person and without subjecting men arrestees to the same strip searches. These actions are alleged to have violated the Fourth and Fifth Amendment rights of the women, who seek to recover money damages from the District of Columbia pursuant to 42 U.S.C. § 1983. The District of Columbia cannot be liable to Plaintiffs as a matter of law on any of the theories they advance, however, inasmuch as Marshal Dillard was a federal official and not an employee, servant, agent or actor under the control of the District of Columbia, and inasmuch as the District of Columbia had no choice but to turn over arrestees to the Superior Court Marshal for presentment. Therefore, the Court will grant the District of Columbia's motion for summary judgment.

## I. FACTS

Plaintiffs are women who were arrested in the District of Columbia, taken to the Superior Court of the District of Columbia for presentment, and subjected to strip, visual body cavity and/or squat searches by Superior Court Marshal Dillard while being held in the Superior Court cellblock awaiting presentment. Plaintiffs are proceeding as two classes, a Fourth and a Fifth Amendment Class.[1] The Fourth Amendment Class consists of all women who, between December 2, 1999 and April 25, 2003, were held for presentment in the cellblock of the Superior Court for an offense that did not involve drugs or violence and who were subjected to a blanket policy of strip, visual body cavity search and/or squat search without any individualized finding of reasonable suspicion or probable cause that she was concealing drugs, weapons or other contraband. The Fifth Amendment Class consists of all women arrestees who, during the same time frame, were held for presentment in the cellblock of the Superior Court and who were subjected to a blanket policy of strip, visual body cavity and/or squat search under similar circumstances for which men arrestees were not subjected to a similar policy of blanket strip, visual body cavity and/or squat searches.

Plaintiffs seek to hold the District of Columbia liable for the strip searches pursuant to 42 U.S.C. § 1983 on three theories: (1) that the office of the Superior Court Marshal is part of the organic government of the District of Columbia; (2) that Marshal Dillard was a joint actor with the District of Columbia in handling pre-presentment arrestees; and (3) that the District of Columbia entrusted its pre-presentment arrestees to the custody of the Superior Court Marshal when it knew

---

[1] By Order dated February 8, 2008, the Court granted Plaintiffs' motion to certify these classes and declined to certify an Alternative Fourth Amendment class that would have included men. *See* Dkt. # 159. The Court also dismissed claims for injunctive relief against the United States Marshal Service. *See id.*

or should have known about the strip searches.  The District filed a motion for summary judgment,

arguing that it cannot be held liable as a matter of law under any of those theories.  After briefing

was completed, the Court held oral argument on October 7, 2008.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be

granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment

is properly granted against a party that "after adequate time for discovery and upon motion . . . fails

to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  To

determine which facts are "material," a court must look to the substantive law on which each claim

rests. *Anderson*, 477 U.S. at 248.  A "genuine issue" is one whose resolution could establish an

element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at

322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position. *Id.* at 252.  To prevail on a motion for

summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a

3

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. ANALYSIS

The District of Columbia occupies a unique place in the United States, neither a State nor a Territory but the "Seat of the Government of the United States." U.S. Const. art. I, § 8, cl. 17. The Constitution reserves to Congress the power "to exercise exclusive Legislation in all cases whatsoever over such District . . . ." *Id.* Thus, Congress exercises plenary power over the District of Columbia, establishing a relationship quite different than the one that exists between the federal government and the States. *See O'Donoghue v. United States*, 289 U.S. 516, 539 (1933). "The constitutional grant sanctions congressional establishment of all of the trappings of municipal authority in Washington, including the creation and oversight of all three branches of the District's government." Steven M. Schneebaum, *The Legal and Constitutional Foundations for the District of Columbia Judicial Branch*, 11 UDC/DCSL L. Rev. 13, 13 (2008). The peculiarity of the relationship comes sharply into focus when exploring the legal foundations for the local judiciary in the District of Columbia and the Superior Court Marshal. A brief history of those legal foundations is necessary to place the parties' arguments in context.

A.      **Legal Foundations for the District of Columbia Courts and Superior Court Marshal**

Prior to Congress's enactment of the District of Columbia Court Reform and Criminal Procedure Act of 1970 ("Court Reorganization Act"), Pub. L. No. 91-358, 84 Stat. 473 (1970), "the courts charged with adjudicating local criminal prosecutions and revolving local civil disputes were a hybrid creature." Schneebaum, 11 UDC/DCSL L. Rev. at 15. "It could be said of them both that they were part of the congressional mandate to oversee the District of Columbia, and they were fully-fledged stars in the federal judicial galaxy." *Id.*

The Court Reorganization Act brought fundamental changes, creating two new Article I courts for the District of Columbia:  the Superior Court and the Court of Appeals, which were formally separated from appellate review by the federal District Court and Circuit Court of Appeals. *See id.* at 16. Judges for the local District of Columbia courts were to be nominated by the President and subject to confirmation by the Senate. *See id.*; D.C. Code § 11-1501(a). "Congress expressly noted in the statute that it was exercising its powers under Article I, § 8, clause 17 in amending the D.C. Code to incorporate this latest overhaul of the third branch." Schneebaum, 11 UDC/DCSL L. Rev. at 16; *see* D.C. Code § 11-101(2) (establishing the local District of Columbia courts "pursuant to Article I of the Constitution"); *see also Palmore v. United States*, 411 U.S. 389, 398 (1973) (noting same); *Jenkins v. Wash. Convention Ctr.*, 236 F.3d 6, 10 (D.C. Cir. 2001) (noting same).

Despite these fundamental changes, "there was no question that the Court Reorganization Act was not promoted by its sponsors as a home rule measure . . . ." Schneebaum, 11 UDC/DCSL L. Rev. at 17. As particularly relevant here, the Court Reorganization Act specified

that "[t]he United States Marshal for the District of Columbia shall continue to serve the courts of the District of Columbia, subject to the supervision of the Attorney General of the United States." Pub. L. No. 91-358, tit. 1, § 111, 84 Stat. 473, 512 (1970) (codified at D.C. Code  § 11-1729).

Home rule came to the District of Columbia three years later when Congress passed the District of Columbia Self-Government and Governmental Reorganization Act of 1973 ("Home Rule Act"), Pub. L. No. 93-198, 87 Stat. 774 (1973).  For purposes of this dispute, only certain provisions of the Home Rule Act are relevant.  The Act established a Judicial Nomination Commission of seven members to send three names to the President whenever a vacancy occurs on a local court.  *See* Pub. L. No. 93-198, tit. IV, § 434, 87 Stat. 774, 796 (codified at D.C. Code § 1-204.34(a), (d)(1)).  Although the President continues to name a judge for the District of Columbia local courts with the advice and consent of the Senate, the President's choice is constricted to one of the three persons recommended by the Judicial Nomination Commission.  *See id.* at § 433, 87 Stat. at 795 (codified at D.C. Code § 1-204.33(a)).

It was not accidental that Congress retained the role of the President and Senate in the selection and appointment of judges to the District of Columbia Superior Court and Court of Appeals.  "The parallel between the District government and those of the fifty states was regularly challenged with respect to the appointment process and did not withstand scrutiny."  Schneebaum, 11 UDC/DCSL L. Rev. at 19.  "Members of Congress, including supporters of the bill, insisted that the District was not a state but a city, whose municipal executive should not have the power to nominate members of the judiciary."  *Id.*

Despite the congressional delegation of some of its authority to the newly-created Mayor and Council of the District of Columbia, in the Home Rule Act Congress expressly

"reserve[d] the right, at any time, to exercise its constitutional authority as legislature for the District . . . ." D.C. Code § 1-206.01.   In addition, Congress specifically precluded the Council from "enact[ing] any act, resolution, or rule with respect to any provision of Title 11 [of the District of Columbia Code] (relating to organization and jurisdiction of the District of Columbia courts)," *id.* § 1-206.02(a)(4), and prohibited the Council from "enact[ing] any act or regulation relating to . . . the duties or powers of . . . the United States Marshal for the District of Columbia." *Id.* § 1-206.02(a)(8).   Ultimately, "Congress . . . reserved to itself by legislation the power to organize and to oversee the third branch of the government of the District of Columbia."   Schneebaum, 11 UDC/DCSL L. Rev. at 24.

One final statute must be addressed before turning to the merits of the District's motion.  In the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, tit. VII, § 7608(a)(1), 102 Stat. 4181, 4512 (1988), Congress established the United States Marshals Service as "a bureau within the Department of Justice under the authority and direction of the Attorney General." *Id.* (codified at 28 U.S.C. § 561(a)).  At the same time, Congress created the totally-new position of the Superior Court Marshal. *See id.* (codified at 28 U.S.C. § 561(c)).  Pursuant to the Anti-Drug Abuse Act, the President appoints, "by and with the advice and consent of the Senate, a United States marshal for each judicial district of the United States and for the Superior Court of the District of Columbia." 28 U.S.C. § 561(c).  Marshals must live within their districts except for "the marshal for the District of Columbia, for the Superior Court of the District of Columbia, and for the Southern District of New York. . . . ." 28 U.S.C. § 561(e)(1).  The Director of the Marshals Service "shall supervise and direct" the entire Service "in the performance of its duties" and shall "appoint and fix the compensation" of Service employees. *Id.* § 561(f) & (g).  Every Marshal, including the Marshal for

the Superior Court of the District of Columbia, must meet the minimum pre-employment qualifications established by Congress.  *Id.* § 561(i).

The "powers and duties" of United States Marshals are set out at 28 U.S.C. § 566. "It is the primary role and mission of the United States Marshals Service to provide for the security and to obey, execute, and enforce all orders of the United States District Courts, the United States Courts of Appeals, the Court of International Trade, and the United States Tax Court, as provided by law."  *Id.* § 566(a).  Further,

> The United States Marshals Service is authorized to –
>
> (A) provide for the personal protection of Federal jurists, court officers, witnesses, and other threatened persons in the interests of justice where criminal intimidation impedes the functioning of the judicial process or any other official proceeding; and
>
> (B) investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General.

*Id.* § 566(e)(1).

**B.     The Superior Court Marshal Acts Under Color of Federal Law**

Plaintiffs contend that the United States Marshals Service does not include the Superior Court Marshal because D.C. Code § 11-1729 "obligates the Superior Court Marshal to 'serve' the Superior Court of the District of Columbia, an integral part of the government of the District of Columbia," which subjects the Superior Court Marshal to the authority of the Superior Court "with respect to his handling of District of Columbia prisoners in the Superior Court (including pre-presentment arrestees)."   Pls.' Partial Opp'n to District of Columbia's Statement of Material Facts ("Pls.' Fact Opp'n") ¶ 4.  This argument is the linchpin of Plaintiffs' suit against the

District of Columbia.  *See id.* ¶ 1 (Superior Court Marshal is a § 1983 person because he handles pre-presentment arrestees pursuant to § 11-1729); ¶ 2 (Marshals Service has no authority over Superior Court Marshal, who acts pursuant to §11-1729); ¶ 3 (Superior Court has power over Superior Court Marshal under § 11-1729); ¶¶ 6 & 8 (Superior Court Marshal, whose authority stems from § 11-1729, is part of the "personnel" of the Superior Court); ¶ 9 (the Superior Court Marshal "serves" the Superior Court pursuant to § 11-1729 so that the Superior Court "could order the Superior Court Marshal to stop the strip searches as a matter of law"); ¶ 11 ("the Superior Court Marshal serves the Superior Court"); ¶ 16 ("The Superior Court Marshal handles pre-presentment arrestees pursuant to D.C. Code § 11-1729 or the inherent powers of the Superior Court.").

Plaintiffs misconstrue the applicable statutory provisions.  To begin with, D.C. Code § 11-1729 was part of the Court Reorganization Act, adopted by Congress eighteen years *before* the creation of the office of the Superior Court Marshal as part of the Anti-Drug Abuse Act.  It, therefore, referenced only the United States Marshal for the District of Columbia, clearly a federal position within the United States Marshals Service, and ordered that Marshal to continue to serve the new, local, courts.  *See* D.C. Code § 11-1729.  Plaintiffs rely on § 11-1729 as the sole source of authority for the Superior Court Marshal to handle pre-presentment arrestees, but their reliance is not supported by the text of the statute or the history of the District of Columbia local court system, as outlined above.[2]

---

[2]   Since 1970, Congress has increasingly treated the District of Columbia as a separate political entity and not just a congressional domain, perhaps brought to the realization that the city had become a major urban center by the riots after the 1968 assassination of Rev. Martin Luther King Jr.  *See* Schneebaum, 11 UDC/DCSL L. Rev. at 16 & n.18.  Congress first reorganized the local court system, then granted limited home rule, and now recognizes Eleanor Holmes Norton as a non-voting Congresswoman for the District of Columbia.  Although Congress retains its authority to legislate for the District of Columbia, it considers locally-adopted legislation only after the fact.  *See*

Plaintiffs also downplay the relevance of the Anti-Drug Abuse Act, the legislative source that created the office of the Superior Court Marshal and from which the authority of the Superior Court Marshal — like every other United States Marshal — logically and expressly derives. *See* 28 U.S.C. §§ 561-566.  That enactment leaves no doubt that the Superior Court Marshal and the Marshal for the District of Columbia are separate positions as they are each named in the statute. *See* 28 U.S.C. § 561(e)(1).  Plaintiffs assert that the statute gives no authority to the Superior Court Marshal because § 566(a) states that the "primary role and mission" of the United States Marshals Service is the security and carrying-out of orders of specifically-named federal courts, without reference to the District of Columbia Superior Court.  *See id.* § 566(a).  While subsection (a) of § 566 is so limited,[3] Plaintiffs fail to appreciate the authority of the Marshals Service to "provide for the personal protection of Federal jurists, court officers, witnesses, and other threatened persons in the interests of justice where criminal intimidation impedes on the functioning of the judicial process or any other official proceeding."  *Id.* § 566(e)(1)(A).  The Superior Court Marshal exercises authority over all persons to be presented to a Superior Court judge (a "court officer") in order to provide for the judge's "personal protection" and to avoid "criminal intimidation" which could impede "the functioning of the judicial process" of the Superior Court.  *Id.*  Plaintiffs' reliance on

---

D.C. Code § 1-206.02(c)(1).  By contrast, Congress requires federal executive and legislative oversight and approval of appointments to the District of Columbia local courts, even as it respects their decisions to go through a normal appellate process.  *See* D.C. Code §§ 1-204.33(a); 11-1501(a).  More particularly, Congress has established the Superior Court Marshal as part of the United States Marshal Service with the same presidential nomination and Senate confirmation requirements as all other United States Marshals.  *See* 28 U.S.C. § 561(c).

[3]  The following analysis assumes that the District of Columbia Superior Court judges are not "Federal jurists" within the meaning of § 566(a).  While the United States argues that the Superior Court is a "federal" court, the Court need not decide this issue.  *See infra,* n. 6.

D.C. Code § 11-1729 also ignores the very real authority that the Director of the Marshals Service exercises over the Superior Court Marshal, as a member of the Marshals Service.  *See id.* § 561(f) & (g).  Plaintiffs' repeated argument that the Superior Court Marshal is not part of the Marshals Service or subject to the Director's authority is simply wrong and flatly contradicted by the plain language of the statutory provisions.  *See id.* & § 561(c).

Plaintiffs seek to avoid the Anti-Drug Abuse Act because it is undisputedly a generally applicable congressional enactment that applies well beyond the boundaries of the District of Columbia.  Rather, seeking to apply *Fletcher*[4] and *Settles*,[5] they argue that D.C. Code § 11-1729 is a law applicable solely to the District of Columbia, rendering the Superior Court Marshal a § 1983 "person" when handling District of Columbia arrestees, even if he is otherwise a federal employee. This argument fares no better than its predecessor.  D.C. Code § 11-1729 provides a shaky foundation to the argument: it expressly provides that the Marshal for the District of Columbia shall be "subject to the supervision of the Attorney General of the United States."  D.C. Code § 11-1729. Thus, even under § 11-1729 the Marshal acts under the control of the federal government, not the local District of Columbia government.  This conclusion is strengthened by the provision in the Court Reorganization Act, of which D.C. Code § 11-1729 is a part, that prohibits the District of Columbia Council from adopting any law that would impact the authority of the United States

---

[4]  *See Fletcher v. Dist. of Columbia*, 370 F.3d 1223, 1227 (D.C. Cir. 2004) ("*Fletcher I*") (holding that members of the United States Parole Commission are amenable to suit under § 1983 for actions taken pursuant to § 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub. L. No. 105-33, 111 Stat. 251, 745 (1997)).

[5]  *See Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005) (reaffirming the holding in *Fletcher I* that "a cause of action under § 1983 will lie against the individual members of the [United States Parole] Commission when acting pursuant to the Revitalization Act § 11231").

Marshal for the District of Columbia.  *See* D.C. Code § 1-206.02(a)(8).  In addition, *Settles* and *Fletcher* both involved § 11231 of the Revitalization Act, a law applicable exclusively to the District of Columbia that transferred authority *from* the District of Columbia Parole Board *to* the United States Parole Commission; thus, when the members of the United States Parole Commission exercise authority over District of Columbia prisoners, they are acting in the stead of District of Columbia government officials.  The same cannot be said of the Superior Court Marshal, whose office was created pursuant to § 7608(a)(1) of the Anti-Drug Abuse Act, a generally applicable congressional enactment, and who inherited duties from a *federal* official, the United States Marshal for the District of Columbia.

Plaintiffs also fail to appreciate the complex status of the local District of Columbia courts.  They posit that the District of Columbia Superior Court and the District of Columbia Court of Appeals are an "integral part of the government of the District of Columbia" as if they were fully analogous to the Mayor and Council, both of whom are elected by the local citizens and whose authorities were established by the Home Rule Act, not the earlier Court Reorganization Act.  The local court system is different from the local executive and legislature:  while the Judicial Nomination Committee sends three names to the President, only upon presidential nomination and Senate confirmation can a candidate become a judge.  *See* D.C. Code §§ 1-204.33(a); 11-1501(a).  The general population of the District of Columbia plays no part in this process.  *See* Schneebaum, 11 UDC/DCSL L. Rev. at 18-20.  The intent behind the Court Reorganization Act was clearly to establish Article I courts for the District of Columbia, separate and apart from the federal Article III courts.  *See id.* at 16.  There was then a further grant of local authority for executive and legislative branches in the Home Rule Act, with some limitations on the Council's authority to adopt legislation

12

affecting the District of Columbia courts.  *See* D.C. Code § 1-206.02(a)(4).  Thus, it is unclear —

and the Court need not determine — the degree to which the District of Columbia Superior Court

and the District of Columbia Court of Appeals can truly be considered "integral" to the District of

Columbia government but the very uncertainty of the question saps the force of Plaintiffs' further

argument that the Superior Court Marshal is also "integral" to the local government and not the

federal government.[6]

              In any event, even were D.C. Code § 11-1729 the bulwark Plaintiffs proclaim it to

be, by its express terms it is not applicable to the Superior Court Marshal but only to the Marshal for

the District of Columbia.  *See* D.C. Code § 11-1729.  As emphasized above, the position of Superior

Court Marshal was only established in 1988 as part of the Anti-Drug Abuse Act.  *See* 28 U.S.C. §

561(c).  The creation of that office superseded the provisions of D.C. Code § 11-1729 on which

Plaintiffs rely, as it must have because the Superior Court Marshal inherited the former duties of the

Marshal for the District of Columbia *vis-a-vis* the Superior Court.  *See id.* & § 561(e)(1).  Plaintiffs'

argument that the Superior Court Marshal has no authority to handle Superior Court arrestees unless

from § 11-1729 or the inherent power of the Superior Court is erroneous.  The Superior Court

Marshal's authority stems directly from the relevant provisions of the Anti-Drug Abuse Act, as it

does for every other United States Marshal.

---

[6] The United States argues that the District of Columbia Superior Court and the District of Columbia Court of Appeals are actually "federal" courts.  While there is some support for that position, *see Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 351 (D.C. Cir. 2003) (noting that the District of Columbia Superior Court "is a congressionally created court and, thus, 'federal' in its creation"), there is also support for the opposing view.  *See Galloway v. Superior Court of Dist. of Columbia*, 816 F. Supp. 12, 19 (D.D.C. 1993) (Superior Court is a component of the District of Columbia government).  The Court need not weigh in on the question because  the dispositive issue in this case is the status of the Superior Court Marshal, not the Superior Court.

**C.   The District of Columbia Cannot be Held Liable Because It Has No Authority to Control the Superior Court Marshal and No Choice But to Turn Over its Arrestees to the Superior Court Marshal**

Plaintiffs contend that they need complete discovery before they can address certain issues raised by their claims and the District's motion for summary judgment.  They assert that, without more discovery, they cannot address whether the Superior Court Marshal "may have acted in concert with the government of the District of Columbia and become a § 1983 person," Pls.' Opp'n to Fed. Defs.' Amicus Brief at 10, or whether the District of Columbia is liable because it entrusted its pre-presentment arrestees to the custody of the Superior Court Marshal when it knew or should have known about the blanket policy of strip searches.  *Id.* at 15.  Plaintiffs suggest that discovery to date supports both theories: a deponent for the Federal Defendants under Rule 30(b)(6) of the Federal Rules of Civil Procedure testified that the Superior Court Marshal was just like a "puppet" of the District in the Superior Court cellblock and Marshal Dillard described his position as similar to a "guest" without control and with security decisions made by the Superior Court.  *Id.* at 14.  However, because Plaintiffs' arguments fail as a matter of law, no more discovery is needed.

No "joint actor" liability exists because the Superior Court Marshal is admittedly in exclusive control of handling pre-presentment arrestees to the Superior Court and, as discussed above, the Superior Court Marshal derives his authority from generally applicable federal law, not District of Columbia law.  Therefore, because the District of Columbia has no authority over the Superior Court Marshal, Marshal Dillard's conduct that Plaintiffs' allege violated their constitutional rights "cannot be fairly treated as that of the District of Columbia."  *Williams v. United States*, 396 F.3d 412, 415 (D.C. Cir. 2005).  Plaintiffs seek to avoid summary judgment by contesting facts proffered by the District of Columbia.  However, all of Plaintiffs' fact disputes with the District of

14

Columbia depend on the asserted authority granted to the Superior Court Marshal under D.C. Code § 11-1729, which, as explained above, is not legally correct. *See* Pls.' Fact Opp'n ¶¶ 1-4, 6, 8-9, 11, 16. Rather, the Superior Court Marshal's authority over pre-presentment arrestees is part of his authority to protect court officers, including Superior Court judges, derived from federal law. *See* 28 U.S.C. § 566(e)(1)(A). Inasmuch as the District of Columbia does not have the status of a State, and is subject to the plenary legislative authority of the Congress, it has no authority over the Superior Court Marshal's handling of pre-presentment arrestees before they are presented in the Superior Court.

Plaintiffs' entrustment theory fails for the same reason. Implicit in that theory is that the entrusting entity "had a choice over whether to follow the challenged course of action." *Jones v. Murphy*, 470 F. Supp. 2d 537, 553 (D. Md. 2007). Congress established the United States Marshal for the Superior Court of the District of Columbia and that Marshal performs the same protective duties for local Article I District of Columbia court judges as the marshals in other judicial districts perform for Article III federal court judges. *See* 28 U.S.C. §§ 561(c), 566(e)(1)(A). As is the case in an Article III federal court, no detained person can be presented to a Superior Court judge without passing through the hands of the Superior Court Marshal. *See* D.C. Code §§ 24-201.13; 24-201.14. The District of Columbia has no other alternative but to turn over its arrestees to the Superior Court Marshal. Accordingly, Plaintiffs cannot recover on an entrustment theory. Further discovery cannot change these legal relationships.

## IV.  CONCLUSION

Because the Superior Court Marshal is a federal employee acting pursuant to generally applicable federal law, and because the District of Columbia has no authority to control the Superior Court Marshal and no choice but to turn over arrestees to him, the District of Columbia cannot be held liable for his allegedly unconstitutional acts.  Accordingly, the  District's motion for summary judgment [Dkt. # 178] will be granted and the District of Columbia will be dismissed as a party in this case.  A memorializing Order accompanies this Memorandum Opinion.


Dated: October 31, 2008                    _____/s/_____
                                           ROSEMARY M. COLLYER
                                           United States District Judge

16